## No. 11,132.

THE STATE EX REL. A. BASSETTI AND WM. H. CHURCHILL vs. JUDGE OF THE SECOND RECORDER'S COURT OF NEW ORLEANS.

1. Prohibition is an order rendered to forbid further proceedings in a cause on the ground of a want of jurisdiction. When the proceedings in a particular case have terminated, it would be quite futile to issue that writ.
2. The jurisdiction of a committing magistrate is not affected by the fact that in affidavits taken before him, wherein facts are charged to have been committed which constitute a crime, an error has been made in the statement as to the particular statute violated, the statement can be stricken out as surplusage, and the error disregarded.
3. The Supreme Court will not consider an application for a writ of prohibition unless it be shown that relief on the ground of a [want of jurisdiction was unsuccessfully sought below.

PPLICATION for Prohibition.

_Buck, Dinkelspiel & Hart_ for the Relator:

In the case of Larthet vs. Forgay, 2 An., p. 254, this language appears:

"The court below charged the jury in substance, and, we think, correctly, that the breaking into and search of the plaintiff's shop and dwelling were not authorized by the warrant. The search should have been confined to the cabaret, or, at most, to the premises of Marcel. Such warrants must be construed strictly. The law regards the dwelling and the domestic repose of the citizen with too much jealousy to trust the place of execution of such process to the discrétion of police officers. So important is this subject that it has been deemed worthy of express notice in the Constitution of the United States, which declares that 'the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no· warrants shall issue but on probable cause, supported by oath or affirmation,' .and particularly describing the place to be searched, and the persons or things to be seized. Amendments Const. United States, Art. 4.

"This article is an affirmance of a great constitutional doctrine of the common law, which had nevertheless been occasionally violated by general warrants; and to prevent this abuse the solemn written prohibition was framed. A principle so indispensable to the enjoyment of personal security and private property should be enforced in its full spirit and integrity; but it would be violated if courts should sanction such a latitude of construction as invoked by the defendant for the warrant in question. See 13 Mass. 286; 3 Story on the Constitution, 748." Larthet vs. Forgay, 2 An. 254.

*Lionel Adams* for the Respondent:

1.  For separate suits against several individuals, there should be several applica-
    tions for prohibition. Heard's Shortt Ex. Rem., p. 486; Am. and Eng. Encyc.
    Law, pp. 280, 281; 39 An. 1030; 32 A. 1165.
2.  The writ of prohibition will not issue where the question of jurisdiction has
    not been raised or decided by the lower court. High's Ex. L. Rem. (2d Ed.),
    Secs. 733, 765; 19 Am. and Eng. Encyc. Law, p. 270; 29 An. 806; 37 An. 845; 38 An.
    569; Id. 920; 40 An. 607; 41 An. 910.
    This rule obtains ;in the proceedings had before a Recorder's Court of New
    Orleans. State ex rel. Baker vs. Recorder, 43 An. 1119.
3.  If the application for the writ is submitted simply on the petition and answer,
    and the answer denies the leading allegations of the petition, the writ should
    be dismissed. 19 Am. and Eng. Encyc. Law, p. 281.
4.  Prohibition is an extraordinary judicial writ, issuing out of a court of superior
    jurisdiction and directed to an inferior court for the purpose of preventing the
    inferior tribunal from usurping a jurisdiction with which it is not legally
    vested. High's Ex. L. Rem. (2d Ed.), Secs. 762. 765; 19 Am. and Eng. Encyc. Law,
    p. 266; C. P., Arts. 845, 487, 851; Const., Art. 90.
5.  Like all other extraordinary remedies, this writ is to be resorted to only in
    cases where the usual and ordinary forms of remedy are insufficient to afford
    redress. High's Ex. L. Rem. (2d Ed.), Sec. 770; 19 Am. and Eng. Encyc. Law,
    p. 266; 11 An. 696; 21 An. 123.
6.  It can not be made to perform the functions of an appeal, a writ of error, or a
    *certiorari*—its purpose being, not to correct errors, but to prevent an usurpa-
    tion of jurisdiction. 19 Am. and Eng. Encyc. Law, pp. 266, 268; High's Ex. L.
    Rem., Sec. 767, 771, 772; Heard's Shortt Ex. Rem., p. 438, note; Broom. Comm.
    (7th Ed.), 231, 232; 19 Am. and Eng. Encyc. Law., p. 274; 33 An. 1356.
7.  The recorder's duties and functions with respect to the complaints made be-
    fore him against the relators are purely ministerial, as they are clearly and
    specially pointed out by positive enactments, and no element of discretion is
    left in their performance. R. S., Sec. 1010; Acts of 1884, p. 117; Acts of 1886,
    p. 64.
8.  While the writ will go in proper cases, as to matters of purely judicial nature,
    it will not issue if the proceedings which it is sought to prevent are only minis-
    terial. High's Ex. L. Rem., Sec. 769; 19 Am. and Eng. Encyc. Law, pp. 268, 269;
    Heard's Shortt Ex. Rem., p. 440.
9.  (*a*) The regularity of the proceedings of inferior courts is presumed, jurisdic-
    tion once being shown to exist.
    (*b*) The burden of proof is on those who deny that the formal requisites to its
    validity have been complied with. Lawson, Presumptive Ev., p. 34, *et seq.*; 19
    Am. and Eng. Encyc. Law, p. 49.

The opinion of the court was delivered by

NICHOLLS, C. J.   Relators aver that upon affidavits made before
A. R. Moulin, Judge of the Second Recorder's Court of the city of
New Orleans, by Phil. Jacobs on " information received," warrants
for their arrest issued, they being charged with violation of Act No.
10 of 1874.

That in said affidavits a statement was made that a search warrant should issue to seize all books, papers, letters, etc., contained in the office of relators, at the corner of Customhouse and Dorsiere streets, in this city.

That no cause, probable or otherwise, was shown why a search warrant should issue, and the things to be seized were not particularly described as required by the Bill of Rights of the Constitution of the State.

That under said affidavits and warrants relators were arrested and kept at their place of business several hours, denied the benefit of bail, their office ransacked by the policemen, and finally same was taken possession of by them—they retaining the keys thereof—when, after repeated demands of the judge, he finally allowed relators to be taken to his court, where bail was given, the officers previously refusing to take relators to court or to jail, but keeping them under arrest in their own office.

That said proceedings were instituted and carried on under a law which was expressly repealed more than thirteen years ago, and are absolutely null, void and illegal.

That said so-called search warrant was unwarranted and improvidently issued because no cause was shown for same, no proper oath was made in reference thereto, and the things to be seized were not particularly described.

That relators demanded of the clerk of said court copies of said affidavits to present to this court as part of their petition, but they had been unable to obtain the same, and had been told on the day of the filing of the same that they would be given copies during the day after 12 o'clock, and therefore relators had beenunable to present copies to the court.

That they had no remedy in the premises save by a writ of prohibition from the hands of this court. Relators prayed that a writ of prohibition issue directed to the said Judge of the Second Recorder's Court, prohibiting and restraining him from proceeding further under the aforesaid affidavits and warrants, and that he be ordered to show cause why the prohibition should not be made perpetual, and all proceedings under said affidavits and warrants be annulled and set aside.

On this application the recorder was ordered to show cause why

the writ of prohibition should not be granted, and in the meantime and until further orders of the court further proceedings under the affidavits and warrants issued were stayed.

The recorder's answer was to the effect that there was a misjoinder of relators; that there had never been any proceedings instituted in his court in which they were joined; that the only prosecutions pending against them are separate and distinct affidavits charging each of them individually and separately with having sold and offered for sale certain tickets in an unlawful lottery in this State; and with having, each of them, aided, assisted and abetted, and having been interested in, an unlawful lottery within the State; and with setting up, promoting and managing the said unlawful lottery, which was commonly known as the Mexican Lottery Company; and that all of the acts therein charged to have been done by the relators were unlawfully done and constitute an offence and offences against a good and valid statute of the State of Louisiana, towit: Act No. 44 of the session of 1879.

That in said affidavits it was separately and distinctly charged upon oath that each of said relators did, upon the dates therein mentioned, "sell, barter, exchange, give and otherwise dispose of, and did each have in his possession, within the State, with intent to sell and offer for sale, and to barter, exchange, give and otherwise dispose of certain tickets, intending and purporting to entitle the holder or bearer to a prize drawn and to be drawn in a certain lottery company known as the Mexican Lottery Company, which is not authorized by the laws of Louisiana."

And that in said affidavits it was separately and distinctly charged " that each of them did aid and abet in promoting a lottery not now authorized by the laws of the State, the Mexican Lottery Company, and was concerned in setting up and promoting and managing said company, all of which respondent declares was in violation of said Act No. 44 of 1879."

That by error in making out the affidavits the act of the State declared therein as having been violated was referred to as being Act No. 10 of 1874, instead of said Act No. 44 of 1879.

That the cognizance of the prosecutions before this court instituted against relators belonged of right to his court because of its territorial jurisdiction, and that he, as a recorder thereof, is a com-

mitting magistrate, with competent authority to receive the said complaints against relators, to cause their apprehension, to issue search warrants for the obtaining of evidence of a commission of the offence against them charged, to summon and hear witnesses, and to determine, after inquiry and examination, whether it appears that the said offences charged against relators had been committed.

That he was duly authorized, and it was competent for him notwithstanding the said error contained in the affidavits, to have proceeded in accordance with law with the examination of the complaints against relators for violating a penal statute of the State, and that by law of the land they were bound to answer the same.

That on said complaints upon oath, charging the recited complaints against the relators, a search warrant was prayed for to search for "all the books, letters, papers, tickets, stamps, and all the documents and instruments appertaining to or concerning a certain lottery company known as the Mexican Lottery Company which might be found in the building corner of Customhouse and Dorsiere streets, occupied by A. Bassetti and William H. Churchill, who were "charged upon oath with setting up and promoting within the State the said Mexican Lottery Company, which is a lottery not authorized by this State."

Respondent further answered that while it was true that relators were arrested at their place of business, it is not true that they were kept there in custody for several hours, or that their said place of business was taken possession of by the officers of the said recorder's court, who retained the keys thereof, but that the detention of the said relators at their place of business was no longer than was necessary to make the search required under the warrant issued by respondent's court, and to communicate to respondent the refusal of the relators to permit the iron safe within their office to be opened under the authority of the search warrants directed for execution to the said officers.

That the proposition to turn over the keys and to place the control and custody of the said office and place of business in the hands of the court was voluntary upon the part of the relators through their counsel.

That the copies of the said affidavits incorrectly stated to have been made pursuant to the provisions of Act 10 of the Acts of 1874

were not made and furnished to said relators, and could not be made and furnished before the hour set out in their petition, for the reason that the affidavit clerk of the Second Recorder's Court was engaged in drawing up, pursuant to new complaints, corrected and perfected charges for the same acts against the said relators for violating the provisions of Act No. 44 of 1879.

That this is not a proceeding having for its object to ascertain whether or not the proceedings before the respondent's court have been regular, but one that sets out that respondent is not competent to examine pursuant to the provisions of law into the complaints against the relators upon oath, made for the reason that the said complaints and proceedings "were instituted and are carried on under a law which was expressly repealed more than thirteen years ago, and are absolutely null, void and illegal, and that the so-called search warrant was unwarranted and improvidently issued, because no cause was shown for the same, no proper oath was made in reference thereto and the things to be seized were not particularly described.

That the proceedings against the relators had in his court have not been brought before this court, and that it is therefore impossible for the court here to determine whether the same are regular in substance and in form.

That the acts complained of did constitute offences against a good and valid law of the State, and that it was competent for respondent, upon reasonable cause, on oath particularly describing the place to be searched and the things to be seized, to issue his search warrants directed to the proper officers, and that having power, authority and jurisdiction to receive the said complaint and to examine into same, and to issue his search warrant upon due and proper showing, in absence of proof to the contrary the proceedings had before respondent are presumed to have been regular, and all the facts necessary to warrant the issuing of his warrants will be presumed to have been established in the manner required by law.

Respondent prayed that his answer be considered in law sufficient to justify his conduct; that the complaint against him be dismissed at relators' costs.

This case, under its pleadings and prayer, comes before us exclusively as one for a prohibition. Relators have not asked, nor has

this court ordered under Art. 855 of the Code of Practice, that " a certified copy of the proceedings be sent (to us) to the end that their validity be ascertained." The record below has therefore not been brought up.

It is true that respondent, on the application made to us, has been ruled to show cause why the proceedings under the affidavits and warrants should not be annulled, avoided and set aside, but we regard that prayer to be merely incidental to the particular relief sought, and as asking that should the prohibition be perpetuated, in the order or decree to that effect, should be adjudged the annulment of antecedent acts of the recorder, on the restricted ground of want of jurisdiction on that officer.

We do not understand the prayer for nullity to be properly leveled against any class of nullities as against which *certiorari* would be the proper remedy.

For the special reason stated later we would be constrained to decline granting relators the relief they ask, but we think it not improper to say that prohibition only issues properly " to prevent further proceedings in a cause " (C. P. 846), and that where the pleadings and evidence show in any particular case that they have been closed it would be a futile act to grant the writ. We infer, in the matter of the present application from respondent's answer, that all proceedings under the original affidavits and warrants have terminated and been abandoned.

It is claimed by relators that the affidavits upon which they were arrested declared that they had violated Act No. 10 of 1874.

That that act was expressly repealed more than thirteen years ago, and therefore the recorder was proceeding without any basis upon which to rest his action.

The recorder replies that these affidavits recited in detail certain facts which, if true, disclose that a crime against the State has been committed by the relators, and that the statement therein of the particular statute violated was unnecessary, and could be stricken out as surplusage, or disregarded, and that an error in this respect did not affect his jurisdiction. In this he is clearly right.

This view does away with any necessity for considering the question whether or not Act No. 10 of 1874 is repealed, assuming such

State ex rel. Morere et al. vs. Judge.

an issue could be properly raised or be made the basis for a writ of prohibition against a committing magistrate.

Independently, however, of all other considerations, relator's application must be denied for the reason that it nowhere appears that they have urged below upon the recorder that he was proceeding outside of his authority and jurisdiction, and sought relief from him on that ground.

This court has so frequently decided that this was an essential prerequisite for the granting by it of a writ of prohibition that a citation of authorities upon the point is unnecessary.

For the reasons herein assigned it is hereby ordered, adjudged and decreed that the provisional order herein made be rescinded, and that the application of the relators for a writ of prohibition be and the same is hereby refused.